UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MICROBRIGHTFIELD, INC.,              :
            Plaintiff,               :
                                     :
            v.                       :        File No. 1:05-CV-244
                                     :
ROBERT BOEHRINGER,                   :
            Defendant.               :
                                     :
_____ :

RULING ON DEFENDANT'S MOTION TO DISMISS
(Paper 6)

Plaintiff MicroBrightField, Inc. ("MBF") brings this action
against its former employee, Robert Boehringer, alleging
copyright infringement, breach of contract, unauthorized access
of its computer system, and misappropriation of trade secrets, in
violation of federal and Vermont law.  Boehringer moves to
dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).  For
the following reasons, Boehringer's motion is DENIED.

Background

When considering the motion to dismiss, all facts taken from
MBF's complaint are assumed to be true and all inferences are
drawn in MBF's favor.  Country Home Prods., Inc. v. Schiller-
Pfeiffer, Inc., 350 F. Supp. 2d 561, 564 (D. Vt. 2004). MBF is a
Vermont corporation with its principal place of business in
Williston, Vermont.  (Complaint, Paper 1 ¶ 4.)  In 1995, MBF
hired Boehringer for work in its Vermont office.  (Paper 1 ¶ 7.)
During his approximately ten years with MBF, Boehringer became a

1

Senior Software Engineer and a reputed expert in stereology, the science of three-dimensional interpretation of two-dimensional images, as applied to life sciences. (Paper 1 ¶ 7, 15.) He assumed responsibilities ranging from developing software and performing technical research to providing technical support to both MBF personnel and customers. (Paper 1 ¶ 15.)

Throughout his employment, Boehringer had access to MBF's trade secrets and proprietary information. (Paper 1 ¶ 45.) Pursuant to an employment contract, Boehringer agreed that (1) during and after his employment with MBF, he would keep confidential all of MBF's proprietary or confidential trade, business, and technical information, (2) he would not disclose or make copies of any such information except in the course of MBF's business or as directed by MBF, and (3) any discoveries, inventions, or improvements he made or conceived while employed by MBF belonged solely to MBF if they resulted from work for MBF, use of MBF's property or proprietary information, or related to any technique, process, product, or service developed, made, sold, or used by MBF. (Paper 1 ¶¶ 8-10, 12.) Under the employment agreement, all materials Boehringer collected, summarized, or prepared on stereology were the sole property of MBF. (Paper 1 ¶¶ 15-17.) The employment agreement further stipulated that, upon termination, Boehringer would return to MBF all of its proprietary information. (Paper 1 ¶ 11.)

2

In 1999, Boehringer moved to Blacksburg, Virginia, where he continued to work as an MBF employee, traveling to MBF's Vermont office occasionally each year and sending regular reports of his work.  (Paper 1 ¶¶ 13-14, 31.)  In 2001, Boehringer began pursuing a master's degree at Virginia Polytechnic Institute and State University ("Virginia Tech") while continuing to work for MBF, which also funded his studies.  (Paper 1 ¶¶ 18-20.)  In 2003, while taking a web development course, Boehringer created a website on stereology, accessible, although apparently password-protected, at http://filebox.vt.edu/users/rboehrin/.  (Paper 1 ¶¶ 23-24.)  Without MBF's permission, Boehringer placed on his website information obtained from research and materials he prepared while working for MBF, which MBF describes as "valuable sales and promotional materials."  (Paper 1 ¶¶ 25-27.)  On each web page, Boehringer wrote "Copyright © 2005 Robert Boehringer." (Paper 1 ¶ 28.)  Upon learning of the website in September 2004, MBF asked Boehringer to transfer the website from Virginia Tech's server to MBF's website and server, which he did not do.  (Paper 1 ¶¶ 29, 30.)  Boehringer's Answer suggests that the website materials are his property.  (Paper 6 ¶ 25, 46, 51.)

In 2005, Boehringer's performance for MBF began to decline to the point where he was not performing any work for MBF. (Paper 1 ¶ 31.)  On or about July 6, 2005, Boehringer joined Visiopharm, a Denmark-based competitor of MBF in the field of

stereology.  (Paper 1 ¶¶ 33-35.)  By fax on July 14, 2005, Boehringer notified MBF of his resignation, and MBF immediately terminated Boehringer's access to MBF's source code.  (Paper 1 ¶¶ 36, 37.)  MBF discovered that between the date Boehringer joined Visiopharm and the date MBF terminated his access to MBF's source code, Boehringer had accessed MBF's source code more frequently than he did during the previous three months of work for MBF -- three times on July 5, one time on July 6, and four times on July 11.  (Paper 1 ¶¶ 37-38.)  Boehringer admits that he had access to MBF's source code at various times in July 2005.  (Paper 6 ¶ 37.)

On August 17, 2005, MBF sent Boehringer a letter reminding him of his continuing obligations under the employment agreement and that his website contained MBF's copyrighted information; and demanding the return of any MBF trade secrets and proprietary information in his possession or control, the return of computer equipment owned by MBF, and the removal of all infringing material from the website.  (Paper 1 ¶¶ 39-43.)  In a letter dated August 29, 2005, Boehringer told MBF that he was returning certain equipment, and that he had, without MBF authorization, "reinstalled the operating system on the laptop to restore the laptop to the same condition I received [sic] the laptop," but that he was unable to do so for the desktop computer.  (Paper 1 ¶ 48.)  As of September 2005, when MBF brought this suit,

Boehringer had failed to remove the allegedly infringing materials from his website.  (Paper 1 ¶ 46.)

<u>Discussion</u>

Boehringer has moved to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  MBF bears the burden of showing that its chosen venue is proper.  <u>Country Home Prods.</u>, 350 F. Supp. 2d at 568.  MBF argues, and Boehringer disputes, that venue is proper under either 28 U.S.C. § 1391(b), which provides for venue in a district where "a substantial part of property that is the subject of the action is situated," or 28 U.S.C. § 1400(a), which provides that "civil actions . . . arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."

The proper venue for MBF's action, which arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 <u>et</u> <u>seq.</u> (Paper 1 ¶ 2), is "in the district in which the defendant or his agent resides or may be found," pursuant to Section 1400(a).  <u>See</u> <u>Anichini, Inc.</u> <u>v. Campbell</u>, 2005 WL 2464191 at *5 (D. Vt. 2005) (so holding in a suit brought by a company against its former, non-resident employee for copyright infringement and breach of contract).  Courts have consistently held that for the purpose of establishing venue under Section 1400(a), defendants "may be found" in any jurisdiction in which personal jurisdiction may be

asserted over them.  Id. at *6 (citing Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004)); see also Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 588 (D.N.H. 1987).  Therefore, venue is proper in this District if the Court may assert personal jurisdiction over Boehringer.

Courts use a two-part inquiry to determine whether there is personal jurisdiction over a non-resident defendant.[1]  Anichini, 2005 WL 2464191 at *2 (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).  Courts first review the applicable long-arm statute, then consider whether such jurisdiction violates due process.  Id.  Because Vermont's long-arm statute, 12 V.S.A. § 913(b), allows jurisdiction over defendants to the full extent permitted by the Due Process Clause, the inquiry in Vermont is reduced to only the due process analysis.  Dall v. Kaylor, 658 A.2d 78, 79 (Vt. 1995).  The due process analysis requires the Court to consider (1) whether the defendant has sufficient "minimum contacts" with the forum state, and (2) if such contacts exist, whether jurisdiction based on such contacts is "reasonable under the circumstances of the particular case."  Id. at 79-80.

The guiding principle for evaluating a defendant's contacts with the forum state is that jurisdiction must be based on "some act by which the defendant purposefully avails itself of the

---

[1]  Boehringer resides in Virginia, and owns property at 84 Hardy Avenue, Burlington, Vermont 05401.  (Answer, Paper 6 ¶¶ 5, 6.)

6

privilege of conducting activities within the forum state thus
invoking the benefits and protections of its laws." <u>Sollinger v.
Nasco Int'l, Inc.</u>, 655 F. Supp. 1385, 1386 (D. Vt. 1987) (quoting
<u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).
Jurisdiction is not proper unless the defendant actively
initiates contacts in the state or creates continuing obligations
between himself and a Vermont resident.  <u>Anichini</u>, 2005 WL
2464191 *2 (citations omitted).

In this case, Boehringer initiated his relationship with MBF
with employment in MBF's Vermont office and entering into an
employment agreement that imposed continuing obligations on him.
(Paper 1 ¶¶ 7, 8; Answer, Paper 6 ¶¶ 7, 8.)  While working for
MBF in Vermont, Boehringer came into possession of MBF's
proprietary and confidential information, as well as its computer
equipment, and gained access to MBF's computer system.  (Paper 1
¶ 45.)  After working for MBF for four years in Vermont,
Boehringer continued to work for the company in Virginia for six
years, occasionally traveling to Vermont, regularly communicating
with MBF in Vermont, and accessing its source code.  (Paper 1 ¶¶
14, 25, 31, 37.)  Boehringer's employment agreement imposed
continuing obligations on him to keep confidential all MBF
proprietary information, and to return to it all of its
proprietary or confidential information in his possession or
control.  (Paper 1 at 11.)  These contacts indicate that
Boehringer should have reasonably anticipated being haled into

court in Vermont if he breached the employment agreement.  See Anichini, 2005 WL 2464191 at *3 (finding that nonresident former employee had sufficient contacts with Vermont where employee had solicited employment, agreed to continuing obligations under an employment contract, and maintained routine communications with employer in Vermont); Crosfield, 672 F. Supp. at 586 (finding jurisdiction over non-resident former employee in copyright suit; minimum contacts included working for employer in the forum for ten years, participating in proprietary information employment agreement, committing tortious activity in the forum including loss of proprietary material and breach of fiduciary duty, and possessing former employer's trade secrets while in forum).

To meet the standard for specific personal jurisdiction, MBF must also show that its alleged injuries "arise out of or relate to" Boehringer's contacts with Vermont.  Sollinger, 655 F. Supp. at 1388 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).  MBF claims Boehringer violated his employment contract and MBF's copyrights by displaying and distributing its proprietary materials on his website, and that Boehringer misappropriated trade secrets and accessed MBF's source code and computer system without authorization.  These claims are certainly related to Boehringer's employment and any proprietary information, system access, and computer equipment he obtained as a result.  Boehringer argues that the acts as pled by MBF occurred while Boehringer lived in Virginia, and involved the

creation of a website located on a Virginia Tech server and property "located with" Boehringer in Virginia.  (Paper 7 at 2.) These arguments are unavailing, however, because MBF need only show that its claims "relate to" Boehringer's employment and continuing obligations to MBF in Vermont.  See Sollinger, 655 F. Supp. at 1388.

Because MBF has satisfied the first part of the due process inquiry by establishing that Boehringer had minimum contacts with Vermont, the Court also must consider whether asserting personal jurisdiction based on Boehringer's contacts is reasonable, such that it aligns with "notions of fair play and substantial justice." Anichini, 2005 WL 2464191 *4 (quoting Metro. Life, 84 F.3d at 568).  The key factors in determining reasonableness are the burden jurisdiction puts on the defendant, interests of the forum state, and plaintiff's interest in obtaining convenient, effective relief.  Id. (citing Burger King, 471 U.S. at 477).

In this case, by taking employment in Vermont, and entering into a proprietary information employment contract, Boehringer purposefully availed himself of the benefits and protections of Vermont law, and the privilege of conducting activities here. The parties dispute whether the materials posted on the website are the property of MBF or Boehringer.  (Paper 1 ¶ 25, 51-54; Paper 6 ¶ 25.)  Beyond this dispute, however, is the fact of the employment agreement, under which Boehringer had continuing obligations to MBF and should have reasonably anticipated that

any litigation arising out of his employment would be brought in Vermont courts.  Furthermore, Boehringer might have foreseen that any damage resulting from his conduct would occur in MBF's principal place of business:  Vermont.  MBF should not then need to travel to Virginia to bring claims against Boehringer, who allegedly caused injury in Vermont.  See Crosfield, 672 F. Supp. at 587 (citing Calder v. Jones, 465 U.S. 783, 790 (1984)).

Boehringer also does not assert that litigation in Vermont is burdensome or expensive, focusing instead on refuting minimum contacts.  Any burden on Boehringer, however, which might arise from defending the suit in Vermont is outweighed by both Boehringer's contacts with this forum, and MBF and Vermont's interests in the litigation.  The interests at risk for MBF include protecting its copyrights and trade secrets, the ability to offer unique products and services, and its competition in the field of stereology.  As to Vermont's interests in the litigation, Vermont is concerned with protecting business interests and intellectual property that has been developed by a Vermont company's efforts.  Anichini, 2005 WL 2464191 *5 (citing Real Good Toys, 163 F. Supp. 2d at 425).  In this case, the weight of the reasonableness factors favors jurisdiction over Boehringer in Vermont.

Because Boehringer is subject to personal jurisdiction in Vermont in this suit, he could therefore also "be found" in Vermont and subject to venue in Vermont under 28 U.S.C. §

1400(a).  For this reason, Boehringer's motion to dismiss for improper venue is DENIED.

Boehringer alternatively requests, without any supporting argument, to transfer venue to Virginia.  (Reply, Paper 15 at 1.) Courts may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. 1404(a). Factors that may be considered include the plaintiff's choice of forum, convenience of the parties, convenience of the witnesses, ease of access to evidence, any local interest in the controversy, and relative court congestion.  Country Home Prods., 350 F. Supp. 2d at 570.  Several of these factors are the same as those discussed above in the personal jurisdiction analysis, and for similar reasons, the Court concludes that Boehringer has not met his burden of showing that a transfer to another venue is appropriate.  Accordingly, the Court DENIES Boehringer's alternative request to transfer.

In conclusion, Defendant's motion to dismiss for improper venue, or alternatively, to transfer venue, is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 8th day of February, 2006.


/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

11